## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

_____

FEDERAL TRADE COMMISSION and
STATE OF MAINE,

     Plaintiffs,

     v.

HEALTH RESEARCH LABORATORIES, LLC,
a limited liability company, and

KRAMER DUHON, individually and as an owner
and officer of HEALTH RESEARCH
LABORATORIES, LLC,

     Defendants.

_____

)
)
)
) Case No. 2:17-cv-00467-JDL
)
) **STIPULATED FINAL JUDGMENT**
) **AND ORDER FOR PERMANENT**
) **INJUNCTION AND OTHER**
) **EQUITABLE RELIEF**
)
)
)
)
)
)
)

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the State of

Maine, as represented in this matter by the Office of the Attorney General of Maine ("Maine

AG") (collectively, "Plaintiffs"), filed a Complaint for Permanent Injunction and Other Equitable

Relief against Defendants pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. § 53(b), pursuant to Section 4(a) of the Telemarketing and Consumer Fraud and

Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(a), and pursuant to Section 209

of the Maine Unfair Trade Practices Act ("Maine UTPA"), 5 M.R.S.A. § 209, to obtain

permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of

monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or

practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, the

Telemarketing Act, 15 U.S.C. §§ 6101-6108, the FTC's Trade Regulation Rule entitled

"Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10, and Section 207 of the Maine UTPA, 5 M.R.S.A. § 207, in connection with the labeling, advertising, marketing, distribution, and sale of products purported to cause weight loss, treat arthritis and relieve joint and back pain, and prevent or mitigate cognitive decline.

The Commission, the State of Maine, and Defendants Health Research Laboratories, LLC and Kramer Duhon (hereafter collectively, "Defendants"), stipulate to the entry of this Final Judgment and Order for Permanent Injunction and Other Equitable Relief to resolve all matters in dispute in this action between them, including the allegations in the Complaint.

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the TSR, 16 C.F.R. Part 310, the EFTA, 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10, and Section 207 of the Maine UTPA, 5 M.R.S.A. § 207, in connection with the labeling, advertising, marketing, distribution, and sale of products purported to cause weight loss, treat arthritis and relieve joint and back pain, and prevent or mitigate cognitive decline.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Defendants admit the facts necessary to establish jurisdiction only for purposes of this action.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order. The parties agree to bear their own costs and attorney fees.

5.      Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.      "**Charge**" or "**Charged**" means any attempt to collect money or other consideration from a consumer, including but not limited to causing billing information to be submitted for payment, including against the consumer's credit card, debit card, bank account, telephone bill, or other account.

2.      "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

A.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

B.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

C.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

D.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

E.     The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

F.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

G.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

H.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

3.     "**Close Proximity**" means that the disclosure is very near the triggering representation.  For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

4.     "**Corporate Defendant**" means Health Research Laboratories, LLC, and its successors and assigns.

5.     "**Covered Product**" means any Dietary Supplement, Food, or Drug, including BioTherapex and NeuroPlus.

6.     "**Defendants**" means the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination.

7.     "**Dietary Supplement**" means:  (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel,

gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

8.      "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

9.      "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

10.      "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

11.      "**Including**" means including but not limited to.

12. "**Individual Defendant**" means Kramer Duhon.

13. "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good, program, or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good, program, or service, or to cancel the agreement, is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

14. "**Person**" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

15. "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

# I.

## BANNED WEIGHT-LOSS CLAIMS

**IT IS HEREBY ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Dietary Supplement, over-the-counter Drug, patch, cream, wrap, or other product worn on the body or rubbed into the skin, are permanently restrained and enjoined from representing, or assisting others in representing, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, that such product:

   A.   Causes weight loss of two pounds or more a week for a month or more without dieting or exercise;

B.   Causes substantial weight loss no matter what or how much the consumer eats;

C.   Causes permanent weight loss;

D.   Blocks the absorption of fat or calories to enable consumers to lose substantial weight;

E.   Safely enables consumers to lose more than three pounds per week for more than four weeks;

F.   Causes substantial weight loss for all users; or

G.   Causes substantial weight loss by wearing a product on the body or rubbing it into the skin.

## II.

### PROHIBITED REPRESENTATIONS:  OTHER WEIGHT-LOSS CLAIMS, JOINT-RELATED DISEASE CLAIMS, AND ALZHEIMER'S DISEASE, MEMORY, AND COGNITIVE PERFORMANCE CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Banned Weight-Loss Claims, that, in humans, such product:

A.   Causes or assists in causing weight loss, including any specific amount of weight loss;

B.   Causes or assists in causing fat loss, including any specific amount of fat loss;

C.      Treats or cures rheumatism, arthritis, or osteoarthritis;

D.      Relieves joint pain, back pain, or muscle pain;

E.      Protects the brain against Alzheimer's disease or dementia;

F.      Reverses memory loss;

G.      Improves memory, concentration, or cognitive performance; or

H.      Cures, mitigates, or treats any disease,

unless the representation is non-misleading and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing. In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to Plaintiffs. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

# III.

## PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation about the health benefits, safety, performance, or efficacy of any Covered Product, other than representations covered under the Sections of this Order entitled Banned Weight-Loss Claims and Prohibited Representations:  Other Weight-Loss Claims, Joint-Related Disease Claims, and Alzheimer's Disease, Memory, and Cognitive Performance Claims, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered

Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to Plaintiffs. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## IV.

## PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A.      That any Covered Product is scientifically proven to protect the brain against Alzheimer's disease or dementia, reverse memory loss, or improve memory, concentration, or cognitive performance;

B.      That the performance or benefits of any Covered Product are scientifically or clinically proven or otherwise established; or

C. The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## V.

### FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendants, Defendants' officers, agents, employees, or all other persons in active concert or participation with any of them from:

A. For any drug, making a representation that is approved in labeling for such drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

B. For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## VI.

### PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A. All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.     All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however,* the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendant's size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## VII.

## PROHIBITED REPRESENTATIONS
## RELATED TO ENDORSEMENTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any good or service name, endorsement, depiction, or illustration, that:

A. Any person is an expert with respect to the endorsement message provided by that person;

B. Purported consumers who appear in advertising obtained a reported result through use of those goods or services; and

C. Experts are providing their objective, independent opinions regarding the efficacy of any good or service.

# VIII.

## OTHER PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

A. That consumers are receiving a money-back guarantee, a free trial offer, a risk-free trial offer, a free gift, or a bonus;

B. The total cost to purchase, receive, or use the good or service, including shipping, handling, processing, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer;

C. The timing or manner of any Charge or bill;

D. Any material restrictions, limitations, or conditions to purchase, receive, or use the good or service;

E. Any material aspect of the performance, efficacy, nature, or central characteristics of the good or service;

F. To the extent applicable, that customs duties or taxes may be assessed by the relevant taxing authority; and

G. Any material aspect of the nature or terms of a refund, return, cancellation, exchange, or repurchase policy for the good or service, including the deadline (by date or frequency) by which the consumer must act.

# IX.

## REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, Defendants and their officers, agents, employees, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Failing to Clearly and Conspicuously disclose, or assisting others in failing to Clearly and Conspicuously disclose, before consumers are asked to reveal billing information such as account number or to consent to any purchase in connection with any claim that a good or service is offered on a "free," "risk-free," "trial," "no obligation," "reduced," discounted basis, or words of similar import, the following material terms and conditions of any offer:

1.      In Close Proximity to such claim, the total cost to purchase, or receive, or use any good or service that is the subject of the sales offer, including shipping, handling, and processing;

2.      The amount, timing, and manner of payment of all fees, Charges, or other amounts that a consumer will be Charged or billed, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer; and

3.      The terms and conditions of any refund, cancellation, exchange, or purchase policy or policies, including the specific steps and means by which such requests must be submitted, and the telephone number, email address, web address, or street address to which such requests must be

directed, including the deadline (by date or frequency) by which the
consumer must act, and, if there is a policy of not making refunds,
cancellations, exchanges, or repurchases, a statement regarding this
policy; and

B.      Obtaining, or assisting others in obtaining, billing information such as account
number from a consumer for any transaction involving a good or service that includes a Negative
Option Feature, without first disclosing Clearly and Conspicuously, and in Close Proximity to
where a consumer provides billing information:

1.      The extent to which the consumer must take affirmative action(s) to avoid
any Charges: a) for the offered good or service, b) of an increased amount
after any trial or promotional period ends, and c) on a recurring basis;

2.      The total cost (or range of costs) the consumer will be Charged (including
shipping, handling, and processing), the date the initial Charge will be
submitted for payment, and, if applicable, the frequency of such Charges
unless the consumer timely takes affirmative steps to prevent or stop such
Charges;

3.      The deadline(s) (by date or frequency) by which the consumer must
affirmatively act in order to stop all recurring Charges, whether such
recurring charges are refundable and, if so, the terms and conditions of any
refund policy;

4.      The name of the seller or provider of the good or service and, if the name
of the seller or provider will not appear on billing statements, the billing
descriptor that will appear on such statements;

5. A description of the good or service;

6. Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good; and

7. The mechanism to stop any recurring Charges.

In addition, for any transaction involving a sale of a good or service to a consumer through a Negative Option Feature, within 10 days after the date of the sale, Defendants must send the consumer written confirmation of the transaction, either by email or first class mail, according to the consumer's preference, which is identified as a written confirmation in the email subject line or on the outside of the envelope. Such written confirmation must include Clear and Conspicuous disclosure of all the information required by this Subsection IX.B(1)-(7) above, and must specify the procedures by which consumers can cancel or obtain a refund if a refund is offered.

## X.

## EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from using billing information to obtain payment from a consumer, unless, prior to using such billing information to obtain payment, they obtain the express informed consent of the consumer.

A. For all written offers with a Negative Option Feature (including over the Internet or other web-based applications or services), a consumer's express informed consent must be

obtained, prior to Defendants' obtaining any billing information from consumers, through a check box, signature, or other substantially similar method, that consumers must affirmatively select or sign to accept the Negative Option Feature. Immediately adjacent to such check box, signature, or substantially similar method, Defendants must disclose all costs associated with the Negative Option Feature, including shipping, handling, and processing, that the consumer is agreeing to pay such costs, the length of any trial period, and the date by which consumers must cancel to avoid being Charged. This disclosure must contain no additional information and must be Clear and Conspicuous in relation to any other information provided on the page relating to costs, risks, or obligations associated with any Negative Option Feature, including any terms referring to "free," "trial," and "processing fee."

B.      For all oral offers including a Negative Option Feature, Defendants must, in addition to disclosing the information identified in the Section entitled Required Disclosures, and prior to obtaining any billing information such as account number from a consumer, obtain affirmative and unambiguous oral confirmation that the consumer:

1.      Consents to authorizing payment for any goods or services, including shipping, handling, and processing;

2.      Understands that the transaction includes a Negative Option Feature; and

3.      Understands the specific affirmative steps the consumer must take to prevent further Charges.

Defendants must maintain for 3 years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in the Section entitled Required Disclosures. Each recording must be retrievable by date and by the

consumer's name, telephone number, or billing information and must be provided upon request and without Charge to the consumer, the consumer's bank, or any law enforcement entity.

## XI.

## PROHIBITIONS CONCERNING REFUNDS AND CANCELLATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from:

A. Failing to honor a refund, return, or cancellation request that complies with any policy to make refunds or allow returns or cancellations; and

B. Failing to provide a simple mechanism for a consumer to immediately stop any recurring Charge for such good or service, at least one of which is as simple and easy to use as the mechanism the consumer used to initiate the Charges.

  1. For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Defendants must provide a mechanism for consumers to stop the recurring Charge over the Internet or through such other web-based application or service.

  2. For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Defendants must maintain a telephone number through which the consumer can easily cancel the good or service, seek a refund for past

Charges where such refund is offered, and immediately stop all further

Charges.  Defendants must answer all calls to this telephone number

during normal business hours.

## XII.

## COMPLIANCE WITH THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees,

and all other persons in active concert or participation with any of them, who receive actual

notice of this Order, whether acting directly or indirectly, in connection with the advertising,

marketing, promotion, offering for sale, sale, or distribution of any good or service, are

permanently restrained and enjoined, in connection with any person who purchases any good or

service subsequent to the date of this Order, and who uses a debit card or other means of

electronic fund transfer, from:

A.      Failing to obtain written authorization for Preauthorized Electronic Fund

Transfers from a consumer's account before initiating any Preauthorized Electronic Fund

Transfer, as required by Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. §

1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), as more fully set out

in Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to

Regulation E, 12 C.F.R. § 1005, Supp. I; and

B.      Failing to maintain procedures reasonably adapted to avoid an unintentional

failure to obtain written authorization for a Preauthorized Electronic Fund Transfer, as required

in Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to

Regulation E, 12 C.F.R. § 1005, Supp. I.

# XIII.

## MONETARY JUDGMENT AND CONSUMER REDRESS

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of $3,700,514 is hereby entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.      Defendants are ordered to pay to the Commission $800,000.  Defendants stipulate that they have posted $450,000 into the escrow account of their undersigned counsel for no purpose other than payment to the Commission.  Defendants will remit the balance of $350,000 to the escrow account of their undersigned counsel prior to submission of this Order to the Court for approval.  The escrowed funds shall be paid to the Commission within 7 days of the Court's entry of this Order and shall be transferred in accordance with the wire transfer instructions previously provided to counsel by a representative of the Commission.

C.      Upon satisfaction of the obligations described in Subsection B above, the remainder of the judgment as to the Defendants shall be suspended subject to Subsections E and F below.

D.      In the event of default of any obligation to make payments under this Order, including, but not limited to, failure to pay $800,000 to the Commission pursuant to Section B, above, interest shall accrue as computed pursuant to 28 U.S.C. § 1961(a) from the date of default to the date of payment.  In the event such default continues for 10 calendar days beyond the date any payments are due, the entire judgment amount of $3,700,514 shall immediately become due and payable.

E.      Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial

statements and related documents (collectively, "financial representations") submitted to Plaintiffs, namely the following:

       1.      the Financial Statement of Individual Defendant Kramer Duhon signed on December 19, 2016, including the attachments (HRL003490-3504; HRL004034);

       2.      the Financial Statement of Corporate Defendant Health Research Laboratories, LLC, signed by Kramer Duhon, President, on December 18, 2016, including the attachments (HRL003474-3489); and

       3.      the additional documentation and information submitted by letter from Defendants' counsel Andrew Lustigman to Commission counsel Elizabeth Nach, dated December 22, 2016; January 13, 2017; February 8, 2017; February 17, 2017; February 28, 2017; March 31, 2017; and April 20, 2017; including all attachments thereto (bates-stamped HRL003227-4894 and 117 un-stamped JP Morgan investment account statements).

      F.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by either of Plaintiffs, the Court finds that such Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified in Subsection E above.

      G.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to the Defendant or Defendants causing the suspension to be lifted in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

      H.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including

consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the money shall be divided with the State of Maine.  Any money not transferred to the State of Maine or not used by the Commission for equitable relief, including consumer information remedies, is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

I.      All money paid to the State of Maine pursuant to this Order must be deposited into the Attorney General's other special revenue account and used for consumer education, consumer protection, antitrust enforcement, or for any lawful purpose at the sole discretion of the Attorney General.

J.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

K.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of either of Plaintiffs, in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

L.      The facts alleged in the Complaint establish all elements necessary to sustain an action by either of Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

M.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted

to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## XIV.

## COOPERATION WITH FTC AND MAINE

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the Commission, the Maine AG, and any of their representatives in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants must provide truthful and complete information, evidence, and testimony. Individual Defendant must appear and Corporate Defendant must cause its officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a representative of the Commission or the Maine AG may reasonably request upon 5 days' written notice, or other reasonable notice, at such places and times as a Commission or Maine AG representative may designate, without the service of a subpoena. Defendants may have counsel present.

## XV.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the labeling, advertising, marketing, distribution, or sale of any formulation of BioTherapex or NeuroPlus; and

C.      Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from representatives of both the Commission and the Maine AG.

*Provided, however,* that customer information need not be destroyed, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XVI.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission and the Maine AG an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 10 years after entry of this Order, the Individual Defendant for any business involved in the sale or marketing of any Covered Product that such Defendant, individually or collectively with the Corporate Defendant, is the majority owner or controls directly or indirectly, and the Corporate Defendant, must deliver a copy of this Order to:

1. All principals, officers, directors, and LLC managers and members;

2. All employees, agents, and representatives with managerial responsibility who participate in the manufacturing, labeling, advertising, marketing, distribution, or sale of any Covered Product or service; and

3. Any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.

Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XVII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission and to the Maine AG:

A.      Sixty days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number as designated points of contact, which Plaintiffs' representatives may use to communicate with Defendant;
(b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;
(c) describe the activities of each business, including the goods and

services offered, the means of advertising, marketing, and sales, and the

involvement of the other Defendant (which Individual Defendant must

describe if he knows or should know due to his own involvement);

(d) describe in detail whether and how that Defendant is in compliance

with each Section of this Order; and (e) provide a copy of each

Order Acknowledgment obtained pursuant to this Order, unless

previously submitted to Plaintiffs.

2.      Additionally, the Individual Defendant must:  (a) identify all telephone

numbers and all physical, postal, email, and Internet addresses, including

all residences; (b) identify all business activities, including any business

for which such Defendant performs services whether as an employee or

otherwise and any entity in which such Defendant has any ownership

interest; and (c) describe in detail such Defendant's involvement in each

such business, including title, role, responsibilities, participation,

authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance

notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:  (a) any designated point of

contact; (b) the structure of the Corporate Defendant or any entity that

Defendants have any ownership interest in or control directly or indirectly

that may affect compliance obligations arising under this Order,

including:  creation, merger, sale, or dissolution of the entity or any

subsidiary, parent, or affiliate that engages in any acts or practices subject

to this Order.

2.        Additionally, the Individual Defendant must report any change in:

(a) names, including aliases or fictitious names, or residence addresses; or

(b) titles or roles in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.        For a period of 20 years, each Defendant must submit to the Commission and the Maine AG notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.        Any submission to the Commission or the Maine AG required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.        Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The subject line must begin: *FTC v. Health Research Laboratories, LLC, et al.,* and the number X180007.

F.     Unless otherwise directed by a Maine AG representative in writing, all submissions to the Maine AG pursuant to this Order must be sent by overnight courier (not the U.S. Postal Service) to:  Office of the Attorney General of Maine, Consumer Protection Division, 111 Sewall Street, 6th Floor, Augusta, ME  04330.  The subject line must begin:  *Order in re State of Maine v. Health Research Laboratories, LLC, et al.,* and must identify the Court and docket number of this Order as ordered by the Court.

## XVIII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that in connection with the sale of any Covered Product, Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 8 years.  Specifically, the Corporate Defendant and the Individual Defendant for any business that such Defendants, individually or collectively, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; address; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     Complaints and full or partial refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission and the Maine AG; and

E.     A copy of each unique advertisement or other marketing material.

# XIX.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants'
compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the
Commission or the Maine AG, each Defendant must:  submit additional compliance reports or
other requested information, which must be sworn under penalty of perjury; appear for
depositions; and produce documents for inspection and copying.  Plaintiffs are also authorized to
obtain discovery, without further leave of court, using any of the procedures prescribed by
Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45,
and 69.

B.      For matters concerning this Order, Plaintiffs are authorized to communicate
directly with each Defendant.  Defendants must permit Plaintiffs' representatives to interview
any employee or other person affiliated with any Defendant who has agreed to such an interview.
The person interviewed may have counsel present.

C.      Plaintiffs may use all other lawful means, including posing, through their
representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any
individual or entity affiliated with Defendants, without the necessity of identification or prior
notice.  Nothing in this Order limits the Commission's lawful use of compulsory process,
pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.  Nothing in this Order
limits the Maine AG's lawful use of compulsory process, pursuant to section 211 of the Maine
UTPA, 5 M.R.S.A. § 211.  Defendants hereby consent to the disclosure by the Maine AG to any
law enforcement agency and any representative of the State of Maine of any material or

information produced by Defendants pursuant to section 211 of the Maine UTPA, whether produced before or after the date of this Order.

D.      Upon written request from a representative of the Commission or the Maine AG, any consumer reporting agency must furnish consumer reports concerning Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XX.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED** this 16th day of January, 2018.


_____
        **/s/ Jon D. Levy**
        **U.S. DISTRICT JUDGE**

**IT IS SO STIPULATED** this 30th day of November, 2017.

<div style="margin-left:3em">

DAVID C. SHONKA
Acting General Counsel

/s/ Elizabeth K. Nach
Elizabeth K. Nach
James A. Prunty
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
Telephone: 202-326-2611, -2438
Facsimile:  202-326-3259
Email:  enach@ftc.gov, jprunty@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

</div>

**IT IS SO STIPULATED** this 30th day of November, 2017.

<div style="margin-left:3em">

JANET T. MILLS
Attorney General, State of Maine

/s/ Brendan F.X. O'Neil
Brendan F.X. O'Neil
Linda J. Conti
Assistant Attorney General
Office of the Attorney General of Maine
6 State House Station
Augusta, Maine 04333-0006
Telephone: 207-626-8842, -8591
Facsimile:  207-624-7730
Email:  brendan.oneil@maine.gov
          linda.conti@maine.gov

</div>

**IT IS SO STIPULATED** this 30th day of November, 2017.

HEALTH RESEARCH LABORATORIES, LLC
By:

/s/ Kramer Duhon
KRAMER DUHON, individually, and as an owner
and officer of HEALTH RESEARCH
LABORATORIES, LLC

**IT IS SO STIPULATED** this 30th day of November, 2017.

ATTORNEYS FOR DEFENDANTS HEALTH
RESEARCH LABORATORIES, LLC AND
KRAMER DUHON

/s/ Andrew B. Lustigman
Andrew B. Lustigman, Esq.
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, NY 10019
Telephone: (212) 451-2258
Facsimile:  (212) 451-2222
Email:  alustigman@olshanlaw.com
*Pro hac vice forthcoming*

/s/ David J. Marchese
Appearing on behalf of Defendants
Health Research Laboratories, LLC and
Kramer Duhon

David J. Marchese, Esq.
Drummond & Drummond, LLP
1 Monument Way
Portland, ME 04101
Telephone: 207-774-0317
Email: dmarchese@ddlaw.com